OPINION
{¶ 1} This accelerated calendar appeal, submitted on the briefs of the parties, arises from the Lake County Court of Common Pleas. Appellant, Walter Garrett ("Garrett"), appeals the trial court's October 17, 2003 judgment entry granting summary judgment in favor of appellees, Ohio Farmers Insurance Company ("Ohio Farmers") and Roxie Nonamaker ("Nonamaker").
 {¶ 2} The following facts are extracted from the record. On August 23, 2001, Garrett was involved in an automobile accident while riding as a passenger in a car driven by his girlfriend, Bonnie Victor ("Victor"). Victor's car collided with another automobile, and Garrett sustained various injuries, including several fractures. On August 27, 2001, Ohio Farmers was notified of the accident. Roxie Nonamaker, a claims adjuster with Ohio Farmers, met with Victor and Garrett on August 29, 2001. Although not a named insured on the Ohio Farmers policy, Garrett was an insured as defined under the Auto Medical Payments Coverage provision of the policy.
 {¶ 3} According to Garrett, he inquired about coverage for his medical costs by Ohio Farmers. He was informed that the applicable policy provided for $5,000 in coverage. Garrett claims he was informed that coverage would only be provided once it was determined who was at fault in the collision and after the matter had been settled. He also alleges he was told if he wanted immediate payment of his medical costs, he should file claims with his own hospitalization and automobile insurance policies. Garrett acknowledges that he was given an authorization form to complete and that he signed it at that time. He acknowledges that he did not date it but claims he was not told by Nonamaker at that time that the form needed to be dated.
 {¶ 4} Nonamaker maintains that Garrett did inquire about coverage and she explained the $5,000 limit. She acknowledged that she did advise Garrett that he may want to consider going through his own auto or health insurance policies to pay any bills in excess of $5,000. She also stated that she gave Garrett an authorization form to complete, which he did, but she was not aware that it was not dated at that time.
 {¶ 5} After meeting with Victor and Garrett, Nonamaker forwarded the authorization form to Lake East Hospital, seeking Garrett's medical records of treatment relating to the collision. On September 19, 2001, Nonamaker received the authorization back from Lake East Hospital, with a letter stating that the authorization could not be accepted, as it was not properly executed for lack of a date next to the signature.
 {¶ 6} On that same date, Nonamaker forwarded another medical authorization form to Garrett, informing him that the initial authorization was not fully executed and that another one would be needed. On September 21, 2001, Ohio Farmers received correspondence from counsel retained by Garrett, Attorney Sintsirmas, advising that he would be representing Garrett in the claim at issue.
 {¶ 7} On September 24, 2001, Nonamaker sent a letter to Sintsirmas, again requesting medical and wage verification regarding the claim. Nonamaker received no response to the request and subsequently sent follow-up requests on February 14, 2002, May 17, 2002, and July 17, 2002, all without response.
 {¶ 8} Finally, in late July 2002, Sintsirmas sent Nonamaker some of Garrett's medical treatment records relating to the collision but not the complete records. On August 14, 2002, Nonamaker again sent Sintsirmas a written request for the complete medical treatment and wage loss records for Garrett relating to the claim. Upon receipt of the records on August 30, 2002, Ohio Farmers sent Sintsirmas notification that the records were complete and that it needed only Sintsirmas' tax identification number in order to prepare a draft for the $5,000 in coverage. The draft was subsequently issued by Ohio Farmers on September 13, 2002.
 {¶ 9} On October 11, 2002, Garrett filed an action in Lake County Court of Common Pleas, alleging bad faith and breach of contract against appellees. Appellees subsequently filed a motion for summary judgment on July 21, 2003, and Garrett filed a motion in opposition.
 {¶ 10} On October 17, 2003, the trial court issued a judgment entry, granting summary judgment in favor of appellees. The trial court determined that Garrett had not been denied coverage but, rather, coverage had been delayed due to Garrett's untimely compliance with Ohio Farmers' requests for medical documentation.
 {¶ 11} Garrett filed this timely appeal with this court, presenting two assignments of error:
 {¶ 12} "[1.] The trial court erred to the prejudice of the plaintiff [appellant] when on defendants' [appellees'] motion for summary judgment, it dismissed plaintiff's [appellant's] claim for bad faith.
 {¶ 13} "[2.] The trial court erred to the prejudice of the plaintiff [appellant] when on defendants' [appellees'] motion for summary judgment, it dismissed plaintiff's [appellant's] claim for breach of contract."
 {¶ 14} In his assignments of error, Garrett contends the trial court erred in dismissing his claims for bad faith and breach of contract and entering summary judgment in favor of appellees.
 {¶ 15} We begin by noting that, pursuant to Civ.R. 56(C), summary judgment is proper when, after construing the evidence in the light most favorable to the nonmoving party, there remains no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, summary judgment should be entered.[1] The party seeking summary judgment must point to some evidence affirmatively demonstrating that the nonmoving party has no evidence to support its claims.[2]
 {¶ 16} In determining whether an insurer acts with bad faith in settling a claim, the test is whether the "`insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'"[3] Reasonable justification does not exist where the insurer acts arbitrarily or capriciously.[4] If an insurer determines that a claim is "fairly debatable" and the insurer's refusal of coverage is based on a genuine dispute over either the facts giving rise to the claim, or the status of the law at the time the claim arose, the insurer may refuse a claim.[5]
 {¶ 17} In the instant case, there was not a refusal of a claim by an insurer but, rather, a delay in coverage. The accident occurred on August 21, 2001, and the claim was subsequently paid in September 2002. The original medical authorization, executed by Garrett on August 29, 2001, was incomplete, which led to the ensuing requests for a second authorization and medical records by appellees. Appellant retained counsel in the matter in September 2001, around the same time as the initial authorization was discovered to be incomplete.
 {¶ 18} A review of the documents submitted with appellee's motion for summary judgment reveals continuing correspondence from appellees to Garrett's counsel with a complete failure to execute a second authorization, or even respond to seven separate requests for medical and wage verification. Garrett responded with incomplete medical records in July 2002. Finally, Garrett sent the complete authorization and medical documentation and, shortly thereafter, the claim was paid at the $5,000 policy limit.
 {¶ 19} Garrett then elected to proceed with litigation, filing his complaint for bad faith and breach of contract, because of the delay in payment. As basis for his bad faith cause of action, Garrett asserted the statements allegedly made by Nonamaker constituted a bad faith effort at providing coverage of Garrett's claim. As noted by the trial court, Garrett's bad faith claim is without merit.
 {¶ 20} Despite Garrett's allegations that Nonamaker informed him that he would not receive payment of his medical costs and lost wages until fault was determined and the matter was settled, the documentary evidence provided with appellee's motion for summary judgment, including the ongoing attempts to retrieve a second authorization and several requests for medical and wage verification information, do not support a claim for bad faith. Garrett did not demonstrate that appellees acted arbitrarily or capriciously. Appellees consistently sought the medical and wage documentation required in order to expedite Garrett's claim. As Garrett continued to ignore these requests, appellees were unable to continue to address his claim without the required documentation. Thus, appellees possessed reasonable justification for delaying payment on Garrett's claim. The trial court did not err in entering summary judgment in favor of appellees on the bad faith claim. {¶ 21} Garrett's first assignment of error is without merit.
 {¶ 22} In his second assignment of error, Garrett contends the trial court erred in dismissing his breach of contract claim and entering summary judgment in favor of appellees.
 {¶ 23} In order to prevail in an action for breach of contract, a plaintiff must establish the existence of a contract, plaintiff's performance under that contract, defendant's breach, and damages.[6] A plaintiff can establish performance by demonstrating substantial performance or tendered performance of the conditions required to be performed by plaintiff under the contract.[7]
 {¶ 24} According to the language of the policy, Garrett meets the definition of an "insured."[8] Garrett asserts appellees were obligated to pay his medical payments under the contract and their refusal to do so was a breach of the contract. Garrett supports his contentions with the sworn affidavits of himself and Victor, both alleging that Nonamaker informed them that no payments would be made until fault was determined and the matter was settled. Garrett claims appellees breached the contract by refusing coverage when the policy specifically states payments will be made under the policy "regardless of fault."[9] Thus, Garrett's entire breach of contract claim focuses on the statements made by Nonamaker that are in direct contradiction to the language of the policy, which states coverage applies regardless of fault.
 {¶ 25} We agree with the trial court's determination that Garrett's breach of contract claim is misplaced. His reliance upon the alleged statements by Nonamaker is not sufficient to demonstrate a breach of contract. First, Garrett completely disregards the actual language of the contract, which states the following under heading Business Auto Conditions, subheading, Loss Conditions:
 {¶ 26} "2. Duties in The Event Of Accident, Claim, Suit or Loss
 {¶ 27} "* * *
 {¶ 28} "Additionally, you and any other involved `insured' must:
 {¶ 29} "* * *
 {¶ 30} "(4.) Authorize us to obtain medical records or other pertinent information."
 {¶ 31} Thus, under the express language of the contract, appellees will provide coverage under the policy providing a number of conditions precedent are met, which include the claimant providing authorization for release of medical records. A condition precedent is defined as "one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or performance of some act, after terms of the contract have been agreed upon, before the contract shall be binding on the parties."[10]
 {¶ 32} Although Garrett looks past this requirement and focuses solely on Nonamaker's assertions, the contract requires Garrett to execute an authorization for medical records relating to the claim. The record reveals at least seven separate attempts at retrieving those medical records by appellees with no response from Garrett. Until appellees received the necessary medical documentation, no coverage under the policy was required. When Garrett finally complied with this condition, coverage was paid in full. Thus, Garrett has failed to establish a claim for breach of contract, as he has not demonstrated that he performed the condition precedent required in order to allow appellees to fully perform under the contract.
 {¶ 33} Therefore, Garrett's breach of contract claim cannot lie where he has failed to establish performance of a condition precedent. The trial court did not err in entering summary in favor of appellees.
 {¶ 34} Based on the foregoing, Garrett's assignments of error are without merit. The judgment of the Lake County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292, fn.7, quoting Civ.R. 56(C).
[2] Id.
[3] Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 554, quotingStaff Builders, Inc. v. Armstrong (1998), 37 Ohio St.3d 298, 303.
[4] Staff Builders, Inc. v. Armstrong (1998), 37 Ohio St.3d 298 at 302.
[5] (Citation omitted.) Tokles Son, Inc. v. Midwestern Indemn. Co.
(1992), 65 Ohio St.3d 621, 630.
[6] Doner v. Snapp (1994), 98 Ohio App.3d 597, 600.
[7] Ohio Farmers Ins. Co. v. Cochran (1922), 104 Ohio St. 427, paragraph two of the syllabus.
[8] Under the provision entitled Auto Medical Payments Coverage, an "insured" is defined as "[a]nyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.'"
[9] Garrett directs this court's attention to the Liability Coverage portion of the policy, which states, under the Medical Payments section, "[w]e will make these payments regardless of fault."
[10] Mumaw v. Western Southern Life Ins. Co. (1917), 97 Ohio St. 1, 11.