[Cite as *Whisner v. Farmers Ins. of Columbus, Inc.*, 2013-Ohio-4533.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| DANIEL L. WHISNER, JR., et al., | : | |
| Plaintiffs-Appellants, | : | CASE NO.   CA2013-05-071 |
| | : | O P I N I O N |
| - vs - | | 10/14/2013 |
| | : | |
| FARMERS INSURANCE OF COLUMBUS, | : | |
| INC., et al., | | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-04-1394

Alexander M. Schoultheis, 635 West Seventh Street, Suite 401, Cincinnati, Ohio 45203, for plaintiff-appellant, Daniel L. Whisner, Jr.

Smith, Rolfes & Skavdahl Co., L.P.A., Thomas F. Glassman, Andrew L. Smith, 600 Vine Street, Suite 2600, Cincinnati, Ohio 45202, for defendant-appellee, Farmers Insurance of Columbus, Inc.

**HENDRICKSON, P.J.**

{¶ 1}   Plaintiff-appellant, Daniel Whisner, appeals from the Butler County Court of

Common Pleas decision granting summary judgment to defendant-appellee, Farmers

Insurance of Columbus, Inc.[1]  For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2}  On October 15, 2010, Whisner was involved in an automobile accident caused by the negligence of Heather Drinkard.  As a result of the accident, Whisner sustained multiple injuries and received treatment from various medical providers over the next several months.

{¶ 3}  At the time of the accident, both Whisner and Drinkard had automobile insurance policies with Farmers.  Whisner's policy provided that he would be reimbursed by Farmers up to five thousand dollars for any medical expenses he incurred as a result of an accident.  Since Drinkard was the tortfeasor in the accident, her policy covered Whisner's bodily injury claims in this case.[2]  The focus of this lawsuit is whether Farmers exercised bad faith in the delayed payment of Whisner's medical bills under his medical payments claim.

{¶ 4}  Since Farmers insured both parties, both of Whisner's claims were processed in-house.  Pursuant to Farmers' internal system and procedures, claims representatives are assigned to handle separate portions of multiple claims.  This meant that a different claims representative would be assigned to a claim for bodily injury, medical payments or subrogation. In the present case, Farmers opened one claim for Whisner's medical payments claim and assigned it to their claims representative Ramon Chavez.  Farmers also opened a second claim for Whisner's separate bodily injury claim and assigned it to a different claims representative, George Maxey.

{¶ 5}  On October 18, 2010, Whisner was initially notified by Chavez that he was

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.

2. This case involved both Whisner's first-party (medical reimbursement under Whisner's policy) and his third-party (bodily injury under Drinkard's policy) claims against Farmers.  Throughout the remainder of this opinion, we will refer to Whisner's first-party claim as his "medical payments claim" and to the third-party claim as his "bodily injury claim."

assigned to handle Whisner's medical payments claim and instructed Whisner to sign an authorization for release and medical information form in order to process his claim. Dated the same day, Chavez sent a separate letter requesting Whisner to call him to discuss the medical reimbursements available to Whisner under his policy. A few days later, on October 28, 2010, Chavez sent a follow up letter to Whisner informing Whisner that he was assigned as the claims representative for Whisner's medical payments claim.

{¶ 6} Around the same time, Whisner was contacted by Farmers' claims representative, Maxey, who was assigned to Whisner's bodily injury claim. At their meeting, Maxey obtained Whisner's medical authorizations in order to obtain medical records and bills necessary for processing Whisner's bodily injury claim. Maxey also requested that Whisner forward all of his medical bills to him.

{¶ 7} Whisner testified at his deposition that he believed that Maxey was his assigned insurance adjuster responsible for paying his medical bills. However, according to Maxey's deposition testimony, he asserted that since he was only handling the bodily injury claim, he had no authority from Farmers to authorize checks on behalf of the medical payments claim.

{¶ 8} The record reflects that at various times Whisner sent Maxey the medical bills he had incurred. Whisner admits that he never forwarded his medical bills to Chavez. Thus, while the medical bills were received by Maxey under Whisner's bodily injury claim, Chavez was never provided with any medical bills incurred by Whisner as a result of the accident. Therefore, none of the bills that Whisner furnished to Maxey were ever paid by Chavez on behalf of Farmers.

{¶ 9} In April of 2011, after having received a number of collection notices from his medical providers, Whisner contacted his local insurance agent about the situation and inquired about the process for seeking reimbursement. In essence, Whisner believed that he had timely submitted all of his medical bills for reimbursement when he forwarded them to

Maxey. Whisner's local insurance agent responded by directing him to Chavez and stated that all of his medical bills should be addressed to Chavez for reimbursement.

{¶ 10} In October of 2011, Whisner contacted Chavez inquiring about how to get reimbursed for the medical bills that he had paid out-of-pocket. Chavez replied that there was only one medical bill in his file, which was already paid, and that any other bills should be sent to him. Nevertheless, Whisner testified that he never submitted any bills to Chavez.

{¶ 11} On April 13, 2012, Whisner instituted this action alleging multiple claims against Drinkard and Farmers, including one for Bad Faith against Farmers. All claims except the Bad Faith claim involved in this appeal were resolved.

{¶ 12} While in litigation, the parties appear to have had a discovery dispute relating to Whisner's medical bills. In June of 2012, while the lawsuit was pending, counsel for Farmers first informally requested all unpaid medical bills central to the bad faith claim be provided. While Whisner's counsel does not appear to have made any objection to the request, those records were never produced. Since Whisner's trial counsel failed to voluntarily provide the documents requested, Farmers served Whisner on August 14, 2012, with interrogatories and requests for production of documents relating to the unpaid medical bills. Again, Whisner's trial counsel failed to produce these records to Farmers.

{¶ 13} On September 6, 2012, after Farmers' counsel had already requested copies of Whisner's bills, Kettering Medical Systems obtained a default judgment in a separate action against Whisner for unpaid medical bills. Whisner was also served with a lawsuit by OhioHealth Corporation for unpaid medical bills on September 27, 2012.

{¶ 14} On September 21, 2012, Farmers filed a motion to compel discovery requesting that Whisner provide all unpaid medical bills. On October 31, 2012, Whisner's unpaid medical bills were finally received by Farmers' counsel who immediately forwarded them to their client for payment. Shortly thereafter, in November of 2012, Whisner received a check

for the remainder of his five thousand dollar policy limit available under his medical payments claim.

{¶ 15} Although Whisner was ultimately reimbursed for the maximum amount under his policy, he continued to prosecute his bad faith claim on the basis that the judgments rendered against him by Kettering Medical Systems and OhioHealth Corporation had negatively affected his credit. On April 17, 2013 the trial court granted summary judgment in favor of Farmers. Whisner now appeals the trial court's decision granting summary judgment in favor of Farmers, raising one assignment of error:

{¶ 16} THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT APPELLEE, FARMERS INSURANCE OF COLUMBUS.

{¶ 17} In his sole assignment of error, Whisner argues the trial court erred by granting summary judgment to Farmers.

{¶ 18} We begin by noting that summary judgment is a procedural device used to terminate litigation and avoid a formal trial where there are no issues in a case to try. *Simmons v. Yingling,* 12th Dist. Warren No. CA2010-11-117, 2011-Ohio-4041, ¶ 19. Pursuant to Civ. R. 56, summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Whitaker v. Advantage RN, L.L.C.*, 12th Dist. Butler No. CA2012-04-082, 2012-Ohio-5959, ¶ 16, quoting *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 368 (1998). An appellate court's review of a summary judgment decision is de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996).

{¶ 19} It is undisputed that, based upon the nature of the relationship between an insurer and its insured, "an insurer has the duty to act in good faith in the handling and

payment of the claims of its insured, and a breach of this duty will give rise to a cause of action against the insurer." *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272 (1983), paragraph one of syllabus. The standard for determining lack of good faith is "reasonable justification." *Daniels v. Citizens Ins. Co. of Ohio*, 12th Dist. Madison No. CA2005-03-08, 2005-Ohio-6166, ¶ 8. As such "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Id.*, quoting *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 1994-Ohio-461, paragraph one of syllabus. An insurer lacks reasonable justification for denying a claim when its refusal to pay is predicated on an arbitrary or capricious belief that the insured is not entitled to coverage. *Hoskins* at 277.

{¶ 20} In the instant case, Farmers did not refuse Whisner's medical payments claim; rather, it was a delay in payment. Although we recognize that a delay in authorizing reimbursement of medical expenses and an outright refusal of a claim involve different factual scenarios, we find that the same principles of law apply. *See Garrett v. Ohio Farmers Ins. Co.*, 11th Dist. Lake No. 2003-L-182, 2005-Ohio-413. Therefore, we must determine whether Farmers had reasonable justification in handling Whisner's medical payments claim in a manner that resulted in Whisner not receiving his reimbursement check until two years after he initially submitted his medical expenses to Maxey.

{¶ 21} The accident between Drinkard and Whisner occurred on October 15, 2010, and even though most of Whisner's medical expenses were incurred shortly after the accident, the full amount of his medical payments claim was not paid until nearly two years later in November 2012. In essence, Farmers argues that the delay in payment was due to the fact that Whisner failed to provide Chavez with a copy of the medical expenses he incurred. Whisner, on the other hand, argues that the bills were in fact timely delivered to Farmers when he provided Maxey a complete copy of all of his medical bills associated with

the accident. As to his bad faith claim, Whisner argues there are genuine issues of material fact since Maxey represented himself to be Whisner's adjuster for all of his claims and thus should have reimbursed Whisner for his medical payments claim.

{¶ 22} The trial court granted summary judgment to Farmers after it found that Whisner failed to establish any bad faith liability on the part of Farmers. In particular, the court referenced the lengthy delay in the production of the medical bills and Whisner's failure to set forth any allegations to support a finding of bad faith.

{¶ 23} Despite Whisner's allegations that Maxey informed him that he was his insurance adjuster and would take care of the payments relating to his medical care, the trial court did not err in determining that the summary judgment materials do not support a claim for bad faith. Whisner did not present any evidence that Farmers acted arbitrarily or capriciously. It is undisputed that the medical bills in this case were sent to Maxey only and not to Chavez, the agent responsible for paying his medical payments claim. While it is true that both Maxey and Chavez are employed as claims representatives for Farmers, the evidence reveals that it was made clear to Whisner that his respective claims were processed separately and distinct from one another.

{¶ 24} Even though Whisner contends he was confused by this process, the evidence unequivocally shows that he was advised in writing on a number of separate occasions that he was to send all of his medical bills to Chavez for reimbursement under his own policy. Whisner ignored those communications, instead choosing to deal with Maxey. When Whisner became aware that the bills that he sent to Maxey were not being paid, he contacted his local insurance agent who, again, informed Whisner that Chavez was his claims representative and all bills should be submitted to Chavez in order for timely payment. When Whisner later contacted Chavez several months later, Whisner was again informed that any medical bills should be sent to Chavez for reimbursement. However, none of those bills were

ever sent to Chavez.

**{¶ 25}** Moreover, a fair portion of the delay in payment stemmed from the actions of Whisner's counsel in failing to deliver the unpaid medical bills that were the basis of the bad faith claim. As detailed above, Farmers' counsel initially requested all unpaid medical bills in June of 2012, prior to any of the lawsuits filed on behalf of Kettering or OhioHealth. Despite repeated attempts to obtain those medical bills, Whisner's counsel failed to produce those bills until nearly five months later in October of 2012. Indeed, once Whisner did turn over those medical bills, he promptly received the remainder of his policy limits.

**{¶ 26}** Because Whisner continually failed to provide Chavez with copies of all of his unpaid medical bills, Farmers possessed reasonable justification for delaying payment on Whisner's medical payments claim. Simply, despite repeated written notifications and instruction by his local insurance agent, Whisner failed to furnish his medical bills to Chavez, who was responsible for processing his medical payments claim. However, by Whisner's own admission, he failed to do this because of his frustration with the claims handling process. While the claims process may have been confusing due to Farmers internal policy of assigning different claims representatives to separate claims, there are no facts to support a finding that the delay in payment was a result of arbitrary and capricious actions taken by Farmers. Even construing the evidence most strongly in favor of Whisner, there are no genuine issues of material fact in dispute as to this issue. Therefore, we find that the trial court did not err in granting Farmers' motion for summary judgment on the bad faith claim.

**{¶ 27}** Accordingly, Whisner's sole assignment of error is overruled.

**{¶ 28}** Judgment affirmed

S. POWELL and RINGLAND, JJ., concur.