[Cite as *Calderone v. Duebelt*, 2025-Ohio-800.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
### TRUMBULL COUNTY

| | |
|---|---|
| JACQUELYN M. CALDERONE, | **CASE NO. 2024-T-0066** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| ROBERTO B. DUEBELT, et al., | |
| Defendant-Appellant. | Trial Court No. 2022 CV 00629 |

**O P I N I O N**

Decided: March 10, 2025
Judgment: Affirmed

*William R. Biviano*, Biviano Law Firm, 108 Main Avenue, S.W., Suite 700, Warren, OH 44481 (For Plaintiff-Appellee).

*James J. Crisan*, Martin F. White Co., LPA, 156 Park Avenue, N.E., P.O. Box 1150, Warren, OH 44482 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Roberto B. Duebelt, appeals the judgment finding him liable to appellee, Jacquelyn M. Calderone, in the amount of $13,539.30 on claims for breach of contract, fraud, and unjust enrichment. We affirm.

{¶2} In 2022, Calderone filed a complaint against Duebelt, her former fiancé, and, in 2023, filed an amended complaint with leave of the court against Duebelt and Scott W. Baird. Calderone claimed that Duebelt requested to borrow $27,274.30 from her to pay off an unsecured loan to Farmers National Bank ("Farmers Bank") on which he was liable. Baird was a coborrower on the loan with Duebelt, but Calderone claimed that

Duebelt failed to disclose Baird's joint liability to her. Calderone alleged that she agreed to lend Duebelt the money, and she issued a check to Farmers Bank on his behalf. In return, Calderone maintained that Duebelt agreed to make monthly payments of $500 to her until he refinanced or sold certain real property that he had purchased with the Farmers Bank loan, at which time he would pay the remaining balance due to Calderone in full. Thereafter, Calderone claimed that Duebelt made no monthly payments to her, and he repaid her only $10,000 after he sold the property. Calderone further claimed that she and Duebelt terminated their engagement in January 2020, and they agreed to sell the engagement ring and to apply the proceeds toward Duebelt's debt to her. Calderone received $3,735 from the ring sale.

{¶3} Based on these allegations, Calderone asserted claims for breach of contract and fraud against Duebelt and a claim of unjust enrichment against Duebelt and Baird. In her prayer for relief, Calderone requested judgment for the balance due to her from the payoff of the Farmers Bank loan plus punitive damages and attorney fees.

{¶4} Thereafter, Duebelt and Baird each filed motions for summary judgment, which the trial court denied. The case then proceeded to bench trial, where Duebelt maintained that Calderone's payoff of the loan was a birthday gift to him. Following the close of the evidence, Duebelt moved for a directed verdict on Calderone's claims, maintaining that they were barred by the statute of frauds pursuant to R.C. 1335.05. The trial court took the matters under advisement.

{¶5} In a judgment entered on July 31, 2024, the court found Calderone's testimony that she and Duebelt entered into an oral contract for repayment of the payoff to be more credible than Duebelt's assertion that the payoff was a gift. The court also

2

determined that Duebelt had concealed from Calderone that Baird was jointly liable on the loan. The court further concluded that Duebelt and Baird were unjustly enriched by Calderone's payoff of the loan. Accordingly, the court entered judgment against Duebelt and Baird jointly and severally in the amount of $13,539.30, plus interest, and the costs of the action.

{¶6} In the July 31, 2024 entry, aside from noting that Calderone had requested punitive damages and attorney fees, the trial court did not address punitive damages or attorney fees, and thus implicitly overruled these requests. *See Home S. & L. Co. of Youngstown v. Great Lake Plaza, Ltd.*, 2012-Ohio-3420, ¶ 21 (11th Dist.) (a request for attorney fees contained within a general prayer for relief and "not laid out as a separate and distinct claim," is construed as impliedly overruled by the trial court where it is not addressed in the judgment).

{¶7} In his sole assigned error, Duebelt contends:

{¶8} "The trial court's judgment in favor of the Plaintiff-Appellee is against the manifest weight of the evidence and erroneous as a matter of law."

{¶9} When considering challenges to the weight of the evidence, an appellate court reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *see also Eastley v. Volkman*, 2012-Ohio-2179.

Case No. 2024-T-0066

**{¶10}** In reviewing the weight of the evidence with respect to Calderone's claims in this case, we note that the trial court found Duebelt liable on each of the claims for breach of contract, fraud, and unjust enrichment. However, any of these claims individually supports the trial court's judgment against Duebelt in the amount of $13,539.30. As discussed below, we conclude that the trial court did not err in finding Duebelt liable on the breach of contract claim. Accordingly, we do not reach Duebelt's arguments with respect to the fraud and unjust enrichment claims, as they are effectively alternative bases for the judgment, and, thus, the arguments raised challenging the rulings on those claims are rendered moot.

**{¶11}** "In order to prevail in an action for breach of contract, a plaintiff must establish the existence of a contract, plaintiff's performance under that contract, defendant's breach, and damages." (Footnote omitted.) *Garrett v. Ohio Farmers Ins. Co.*, 2005-Ohio-413, ¶ 23 (11th Dist.).

**{¶12}** We first note from the evidence presented at trial, it is undisputed that, on February 3, 2018, Duebelt and Baird signed a promissory note for an 18-month signature loan from Farmers Bank for $25,000. The purpose of the loan was for Duebelt to purchase real estate in Girard, which Duebelt did thereafter purchase and title in his sole name.

**{¶13}** It is further undisputed that, on July 12, 2019, Calderone, who was at that time engaged to Duebelt, paid off the Farmers Bank loan by way of a personal check for $27,274.30. In November 2019, Duebelt sold the Girard property for $40,000 and thereafter provided $10,000 to Calderone. In early 2020, Duebelt and Calderone ended their engagement. Following termination of the engagement, Calderone sold the engagement ring that Duebelt had given her for $3,735.

4

{¶14} The primary dispute between Calderone and Duebelt pertains to whether Calderone's payoff of the Farmers Bank loan was a gift or a loan. On this issue, Calderone testified that in July 2019, Duebelt asked her for a $25,000 loan because his payment on the Farmers Bank loan was soon coming due. At that time, Calderone was pregnant with the parties' child, who was born July 22, 2019. Calderone was aware that her income was going to be reduced while she was on maternity leave, but she had savings that were sufficient to payoff Duebelt's loan. The parties agreed that Calderone would pay off the loan and Duebelt would repay Calderone by making $500 payments to her on the first of each month until Duebelt sold the Girard residence, at which point he would pay her the balance. Calderone maintained that Duebelt assured her that he would make immediate efforts to sell the residence. In accordance with this agreement, Duebelt made an appointment at a Farmers Bank branch. When Calderone and Duebelt arrived at the bank, a bank employee informed them that $27,274.30 was due to pay off the loan due to accrued interest. Calderone did not see, nor did she request to see, a copy of the signed note. She was unaware that Baird had also signed the loan as a borrower and only became aware of this fact through discovery after she commenced this action.

{¶15} In addition, Calderone testified that, following her payoff of the Farmers Bank loan, Duebelt failed to make any monthly payments to her, and he paid her only $10,000 from the sale of the Girard residence. Calderone maintained that Duebelt informed her that he had other expenses and bills to pay from the sale proceeds, and he would pay off the remaining $17,000 later. Calderone maintained that Duebelt's failure to pay her back as agreed was a significant factor in the parties ending their relationship in January 2020.

5

{¶16} Further, Calderone testified that, after the parties ended their relationship, she intended to sell the engagement ring. Calderone submitted as an exhibit a screenshot of text messages between her and Duebelt regarding the ring. The exhibit displays the following messages:

[DUEBELT:] Give me the ring

[CALDERONE:] What does the ring have to do with the car?

[DUEBELT:] Its not about the car its about money

[DUEBELT:] I want the ring

[CALDERONE:] Yes, and you owe me $500 to get the car fixed.

[DUEBELT:] Give me the ring and you'll get ur $500

[CALDERONE:] The ring is going towards the $17000 you owe me.

[DUEBELT:] Absolutely

[DUEBELT:] But u don't call the shots

(Sic. throughout).

{¶17} In contrast with the above testimony, Duebelt testified that Calderone paid off the Farmers Bank loan as a gift to him for his birthday, which is July 14. Although he recalled receiving a reminder in 2019 that the Farmers Bank loan was coming due, he did not ask Calderone for funds to pay off the loan. Duebelt maintained that the $10,000 he provided to Calderone after sale of the Girard residence was a gift to Calderone to show his appreciation.

{¶18} In support of Duebelt's position that the Farmers Bank loan payoff was a gift, he presented the testimony of Lisa Fowler and his mother.

6

{¶19} Lisa Fowler testified that she was familiar with Calderone and Duebelt because she had attended the same fitness class as Calderone at a gym where Duebelt was the instructor. After Duebelt's birthday in 2019, Fowler maintained that she was training with Duebelt at a different gym, and Calderone was present at the gym. Fowler asked Duebelt what he had received for his birthday, and he informed her that Calderone had paid off his loan. She told Calderone that was a nice birthday present, and Calderone responded by saying "yeah" and smiling. Fowler indicated that Calderone was not pregnant during this conversation.

{¶20} However, Calderone testified that if she talked to Lisa Fowler about the loan payoff in 2019, she would have been noticeably pregnant at that time because she paid off the loan on July 12, 2019 and gave birth to the parties' child on July 22, 2019. Calderone further maintained that she was not present at the gym in 2019 after she gave birth.

{¶21} Duebelt's mother testified that she hosted a birthday dinner for Duebelt on July 14, 2019. Duebelt and Calderone were both present. At that time, Duebelt's mother asked Calderone why she paid off the loan for Duebelt's birthday, and Calderone responded that she "wanted to."

{¶22} However, Calderone maintained that she did not pay off the Farmers Bank loan as a gift, and she submitted an exhibit consisting of order receipts for several items that she had purchased for Duebelt's birthday in 2019.

{¶23} Further, as a rebuttal witness, Calderone called her mother, who testified that the day after Calderone gave birth, July 23, 2019, she was at the hospital speaking with Duebelt in the hallway about how expensive children are to raise. At that time,

7

Case No. 2024-T-0066

Duebelt guaranteed Calderone's mother that he would pay back the loan to Calderone. On another occasion, several days later, Duebelt again told Calderone's mother that he would pay back the loan.

{¶24} Based on the evidence admitted at trial, Duebelt maintains that the weight of the evidence does not support judgment against him on the breach of contract claim, because the only evidence of the existence of a contract was the testimony of Calderone. Duebelt maintains that "[t]his scant testimony without more is insufficient as a matter of law to establish an agreement."

{¶25} However, Calderone's testimony established the elements of the breach of contract claim, and it was within the province of the trial court, as finder of fact, to believe Calderone's testimony. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) ("The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.").

{¶26} Accordingly, we cannot say that the trial court's determination that Duebelt breached an oral contract was against the weight of the evidence.

{¶27} Nonetheless, Duebelt further argues that the court erred in implicitly denying his motion for a directed verdict on Calderone's claims pursuant to R.C. 1335.05.

{¶28} "A court's decision to grant or deny a motion for a directed verdict under Civ.R. 50(A)(4) is a question of law that this court reviews de novo." *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 8, citing *White v. Leimbach*, 2011-Ohio-6238, ¶ 22.

{¶29} Civ.R. 50(A)(4) provides:

8

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶30} Here, Duebelt maintains that, if there were an oral agreement that Duebelt would repay Calderone in full after selling the Girard residence, such a sale would not necessarily have occurred within one year, and thus her claim is barred pursuant to the statute of frauds.

{¶31} Duebelt relies on R.C. 1335.05, which provides:

No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

{¶32} However, "[t]he '"not to be performed within one year" provision of the Statute of Frauds . . . has been given a literal and narrow construction.'" *Voelz v. Morgan*, 2015-Ohio-4268, ¶ 50 (5th Dist.), quoting *Sherman v. Haines*, 73 Ohio St.3d 125, 127 (1995). "In particular, the Ohio Supreme Court has held that, '[if] the time of payment under the agreement is indefinite or dependent upon a contingency which may happen within one year, the agreement does not fall within [Section 1335.05].'" *Voelz* at ¶ 50, quoting *Sherman* at syllabus.

9

{¶33} Here, the agreement between Duebelt and Calderone provided that the time of full repayment was dependent on the sale of the Girard residence, which could have been (and in fact was) sold within a year. Accordingly, R.C. 1335.05 does not apply.

{¶34} For the foregoing reasons, Duebelt's sole assigned error lacks merit.

{¶35} The judgment is affirmed.

ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-T-0066