[Cite as *Estate of Samples v. Lagrange Nursing & Rehab. Ctr., Inc.*, 2024-Ohio-4441.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

ESTATE OF KESTER SAMPLES

     Appellant/Cross-Appellee

     v.

LAGRANGE NURSING &
REHABILITATION CENTER, INC., d/b/a
KEYSTONE POINT HEALTH AND
REHABILITATION, et al.

     Appellees/Cross-Appellants

C.A. No.     23CA012051

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    20CV201448

DECISION AND JOURNAL ENTRY

Dated: September 9, 2024

---

HENSAL, Judge.

**{¶1}** The Estate of Kester Samples ("the Estate") appeals a judgment of the Lorain County Court of Common Pleas. Lagrange Nursing & Rehabilitation Center, Cardinal Care Management, and Foundations Health Solutions (collectively "Lagrange") cross-appeal. This Court affirms in part and reverses in part.

I.

**{¶2}** The Estate filed a complaint against Lagrange for medical negligence and recklessness, wrongful death, and violations of nursing home residents' rights under Revised Code Section 3721.13. The complaint alleged numerous instances of failure to provide proper care to Mr. Samples that resulted in injury and, ultimately, in his death. The Estate also sought punitive damages. The parties consented to trial by a magistrate pursuant to Civil Rule 53(C)(1)(c) and

53(C)(2), and trial proceedings began on July 18, 2022. The magistrate granted Lagrange's unopposed motion to bifurcate the punitive damage claims. After presentation of the evidence, Lagrange moved for a directed verdict on punitive damages. The magistrate denied the motion. The Estate moved the magistrate to apply the $500,000 damage cap set forth in Section 2323.43(A)(3) and, although the jury had already begun deliberations, submitted a proposed interrogatory on the issue. The parties briefed the issue, and the magistrate denied the motion.

{¶3} The jury returned a verdict in the amount of $500,000 on the Estate's survivorship claim and, after hearing evidence related to punitive damages, returned a punitive-damage verdict in the amount of $250,000. The magistrate capped the compensatory damages at $250,000. On December 1, 2023, the magistrate awarded the Estate $319,570 in attorney's fees and $1,319.94 in litigation expenses. Lagrange moved for judgment notwithstanding the verdict ("JNOV") on the issue of punitive damages, arguing that the Estate did not present sufficient evidence of actual malice. Lagrange and the Estate attempted to appeal at that time, but this Court dismissed the appeals because the trial court had not independently entered judgment on the magistrate's decision.[1] Once the appeals were dismissed, the trial court entered a judgment consistent with the magistrate's decision on September 11, 2023. On September 23, 2023, the trial court granted Lagrange's motion for JNOV, concluding that there was not sufficient evidence to have permitted the punitive-damages claim to go to the jury. The trial court, therefore, entered judgment awarding the Estate $250,000 in compensatory damages plus costs and statutory interest.

{¶4} The Estate appealed, and Lagrange cross-appealed, challenging the award of attorney's fees under Appellate Rule 3(C)(1) in the event that this Court reversed the order granting

---

[1] Neither party has argued that there was an error in connection with the timing of the motion for JNOV.

judgment notwithstanding the verdict. For purposes of disposition, the assignments of error are rearranged for ease of disposition.

## II.

### THE ESTATE'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT IMPOSED THE LOWER CAP FOR NONECONOMIC DAMAGES SET FORTH IN R.C. 2323.43(A)(2) RATHER THAN THE HIGHER $500,000 CAP SET FORTH IN R.C. 2323.43(A)(3) BECAUSE THE EVIDENCE CONCLUSIVELY SHOWED THAT KESTER SAMPLES SUFFERED A "PERMANENT AND SUBSTANTIAL PHYSICAL DEFORMITY" PRIOR TO HIS DEATH.

{¶5} The Estate's third assignment of error is that the trial court erred by applying the damage cap provided by Section 2323.43(A)(2). This Court does not agree.

{¶6} Section 2323.43(A)(2) limits the compensatory damages recoverable by a plaintiff in a medical claim for injury, death, or loss to $250,000 in the absence of economic loss. Noneconomic damages may exceed this cap but may not be greater than $500,000 per plaintiff when they result from either "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system" or "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life sustaining activities." R.C. 2323.43(A)(3). Application of the damage caps is not dependent on the initiative of the parties because "[a] court of common pleas has no jurisdiction to enter judgment on an award of compensatory damages for noneconomic loss in excess of the limits set forth in this section." R.C. 2323.43(D)(1). *See also* R.C. 2323.43(C)(1) ("In no event shall a judgment for compensatory damages for noneconomic loss exceed the maximum recoverable amount that represents damages for noneconomic loss as provided in divisions (A)(2) and (3) of this section.").

{¶7}    When a "catastrophic injury" under Section 2323.43(A)(3) is alleged, both the trial court and the jury have a function. *See Potts v. Durani*, 2023-Ohio-4195, ¶ 50-51 (1st Dist.). "The trial court must determine whether there is enough evidence to meet the basic evidentiary threshold. Once that threshold is met, it is for the trier of fact, not the court, to determine whether the damages constitute permanent and substantial deformity." *Fairrow v. OhioHealth Corp.*, 2020-Ohio-5595, ¶ 68 (10th Dist.). "Prior to the trial in the civil action, any party may seek summary judgment with respect to the nature of the alleged injury or loss to person or property, seeking a determination of the damages as described in" Section 2323.43(A)(2) or (3). R.C. 2323.43(C)(2). The trial court also can perform its initial function by determining whether an interrogatory should be submitted to the jury or by directing a verdict on the issue of catastrophic injury. *See Potts* at ¶ 51, 53.

{¶8}    In this case, neither party moved for summary judgment seeking a determination of damages as provided by Section 2323.43(C)(2). The Estate did not propose an interrogatory before the jury retired, and neither party moved for a directed verdict on the question of catastrophic injury at the close of the evidence. The jury instructions did not reference catastrophic injury. Instead, the Estate raised the issue after the magistrate instructed the jury and the jury retired for deliberations. The Estate acknowledged that it was "late[,]" then moved "as a matter of law for a finding of substantial physical deformity. . . ." The magistrate ordered the parties to brief the issue over the weekend. The following Monday, the magistrate denied the motion. On the record, the Estate moved to submit an interrogatory to the jury despite the fact that deliberations were underway. Lagrange responded that doing so would lead to both confusion and undue prejudice, and the Estate proposed submitting the interrogatory to the jury separately after a verdict was reached. After the jury returned verdict in favor of the Estate on the negligence claim, the Estate

renewed its motion to submit a separate interrogatory to the jury, proposing that the jury consider the issue in conjunction with punitive damages. The magistrate denied the motion.

{¶9} Because the trial court did not have jurisdiction to enter a judgment in excess of the damage caps provided by Section 2323.43(A), Lagrange was not required to take the initiative to invoke those caps in order for them to apply. *See* R.C. 2323.43(C)(1), (D)(1). To the extent that the Estate's assignment of error challenges the trial court's decision not to submit an interrogatory to the jury regarding catastrophic damages, the Estate's request for an interrogatory was untimely. Civil Rule 49(B) explains that proposed interrogatories must be submitted to opposing counsel and the trial court "prior to the commencement of argument." At that time, the trial court must rule on the proposed interrogatories and, if accepted, submit them to the jury. *Id.* A trial court is not required to consider proposed interrogatories that are submitted outside of the timeframe provided by Rule 49(B). *Waters v. Allied Machine & Eng. Corp.*, 2003-Ohio-2293, ¶ 120 (5th. Dist.); *Huggins Farms, Inc. v. Bucyrus Plaza Ltd.*, 1989 WL 49484, *7 (3d Dist. May 9, 1989). *See also Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97 (1992), paragraph three of the syllabus (concluding that the language of Rule 49(B) does not require a trial court to submit all proposed interrogatories but may reject them if they are untimely or "legally objectionable.").

{¶10} To the extent that the Estate's argument is that the trial court should have applied the higher damage cap of its own accord, that argument is not well taken. "[I]t is for the trier of fact, not the court, to determine whether the damages constitute permanent and substantial deformity." *Fairrow*, 2020-Ohio-5595, at ¶ 68 (10th Dist.). *Accord Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 40-41 (explaining that the roles of trial court and jury under an analogous statute comport with the right to a jury trial). The Estate's third assignment of error is overruled.

**THE ESTATE'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTION FOR [JNOV] OVERRIDING THE JURY'S VERDICT AWARDING PUNITIVE DAMAGES.

**{¶11}** The Estate's first assignment of error argues that the trial court erred by granting Lagrange's motion for judgment notwithstanding the verdict on punitive damages. This Court agrees.

**{¶12}** Punitive damages may only be awarded when "[t]he actions or omissions of [the] defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." R.C. 2315.21(C)(1). The plaintiff must demonstrate that punitive damages are appropriate "by clear and convincing evidence[.]" *Cruz v. English Nanny & Governess School*, 2022-Ohio-3586, ¶ 44, quoting R.C. 2315.21(D)(4). "Even when a plaintiff can establish entitlement to punitive damages, whether to impose punitive damages, and in what amount, is left to the trier of fact." *Whetstone v. Binner*, 2016-Ohio-1006, ¶ 20.

**{¶13}** "Actual malice," for purposes of punitive damages, consists of either "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge" or "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334 (1987), syllabus. The latter is at issue in this case. This definition describes "a positive element of conscious wrongdoing . . . . This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior[,]" and "mere negligence" is not sufficient. *Id*. at 335. The Supreme Court of Ohio has also clarified that a demonstration of recklessness will not establish that punitive damages are warranted. *Motorists Mut. Ins. Co. v.*

*Said*, 63 Ohio St.3d 690, 696-697 (1992), overruled in part on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994).

{¶14} This Court has recognized the distinction between the "actual malice" standard and recklessness, on the one hand, and intentional conduct, on the other. *See Gibbons v. Shalodi*, 2021-Ohio-1910, ¶ 50-65 (9th Dist.). In *Gibbons*, the trial court concluded that a magistrate erred by instructing the jury on punitive damages, and on appeal, the appellant maintained that the trial court applied the wrong standard. *Id*. at ¶ 46, 50. The appellant argued that recklessness was the correct standard, while the trial court's decision "focused on the lack of evidence of intentional conduct." *Id*. at ¶ 61, 63. This Court concluded that neither acknowledged the standard for actual malice articulated by the Supreme Court of Ohio. *Id*. at ¶ 62. This Court then considered whether the evidence was sufficient to support an award of punitive damages, noting that "[a]ctual malice may be inferred from the [defendant's] conduct and surrounding circumstances." *Id*. at ¶ 92, citing *Davis v. Tunison*, 168 Ohio St. 471, 475 (1959). We concluded that the conduct that constituted the defendant's negligent acts demonstrated that she "acted with a conscious disregard for the rights and safety of [a minor] in a way that had a great probability of causing substantial harm. . . ." *Id*. at ¶ 95.

{¶15} As in *Gibbons*, the trial court's decision in this case "focused on the lack of evidence of intentional conduct." *Gibbons* at ¶ 61, 63. The trial court referenced the standard for actual malice set forth in *Preston* and *Motorists*, but also required an additional element. Citing *Gibbons*, the trial court wrote that "[t]he Ninth District, in reliance upon *Preston*, further defined malice as having a component of 'deliberate or intentional' conduct." This Court's decision in *Gibbons* mentioned the language cited by the trial court, but we did not discuss the relationship between that language and the definition of malice articulated by the Supreme Court of Ohio.

{¶16} In the course of its analysis in *Preston*, the Supreme Court referenced competing definitions of actual malice and articulated two principles that governed its decision. The first principle was that punitive damages are not awarded as compensation, but as punishment. *Preston*, 32 Ohio St.3d at 335. Consequently, the Supreme Court reasoned that "positive element of conscious wrongdoing is always required" and explained that "[t]his element has been termed conscious, deliberate or intentional[,] [and] [i]t requires the party to possess knowledge of the harm that might be caused by the behavior." *Id*. The second principle was that punitive damages cannot be awarded based on "mere negligence." *Id*. The Supreme Court explained that this principle "requires a finding that the probability of harm is great and that the harm will be substantial." *Id*. Having addressed these two principles, the Supreme Court articulated a standard that incorporated both, holding that actual malice is "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge" or "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at 336, syllabus.

{¶17} As noted above, recklessness will not suffice to establish actual malice. *Motorists*, 63 Ohio St.3d at 696-697. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 2012-Ohio-5711, paragraph four of the syllabus. In contrast, "actual malice requires consciousness of the near certainty (or otherwise stated 'great probability') that substantial harm will be caused by the tortious behavior. Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages." *Motorists* at 698. "Actual malice" for purposes of punitive damages, therefore, differs from recklessness with respect to the actor's

awareness of the risk and the degree of harm that is likely to result. *See id.*. On the other hand, "actual malice" is a different issue than whether proof of a "direct intent to injure" is required. *See Buckeye Union Ins. Co. v. New England Ins. Co.*, 87 Ohio St.3d 280, 287 (1999).

{¶18} The trial court's decision was based on the conclusion that the evidence did not establish "'a positive element of conscious wrongdoing' that was 'deliberate or intentional….'" This language, however, is not an additional element required to establish actual malice. It reflects one of the principles that the Ohio Supreme Court recognized in *Preston* and considered when articulating the standard to be applied. That standard is whether a defendant had "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston*, 32 Ohio St.3d 334 at syllabus. Stated differently, "actual malice requires consciousness of the near certainty (or otherwise stated 'great probability') that substantial harm will be caused by the tortious behavior." *Motorists* at 698. The trial court, therefore, erred by applying the wrong standard, and the Estate's assignment of error is sustained on that basis. This Court will not consider whether the motion for JNOV should have been granted under the correct standard in the first instance. *See McCormick v. McCormick*, 2022-Ohio-3543, ¶ 10 (9th Dist.).

### THE ESTATE'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT RULES THAT THE ESTATE'S LITIGATION EXPENSES WERE LIMITED TO ITEMS CONSIDERED REIMBURSABLE "COSTS" UNDER OHIO CIV.R. 54(D).

### LAGRANGE'S ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING [THE ESTATE] $319,570 IN ATTORNEY FEES UNDER THE LODESTAR ANALYSIS.

{¶19} The Estate's second assignment of error argues that the trial court erred by limiting its award of litigation expenses, and Lagrange's assignment of error argues that the trial court

abused its discretion in awarding attorney fees. Because Ohio Courts adhere generally to the "American Rule" regarding attorney fees, prevailing parties may not recover attorney fees unless provided by statute or contract or in the event that punitive damages are awarded. *In re S.S.*, 2023-Ohio-245, ¶ 20 (9th Dist.) "When a party is awarded punitive damages, a trial court has the discretion to order the losing party to pay the prevailing party's attorney fees." *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 1.

**{¶20}** This Court must remand this matter so that the trial court can apply the correct standard to Lagrange's JNOV motion in the first instance. For that reason, the Estate's second assignment of error and Lagrange's assignment of error are premature.

### III.

**{¶21}** The Estate's third assignment of error is overruled. The Estate's first assignment of error is sustained. The Estate's second assignment of error and Lagrange's assignment of error are premature. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, P. J.
CONCURS.

SUTTON, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

GERHARDT A. GOSNELL, II and DAMION M. CLIFFORD, Attorneys at Law, for Appellant/Cross-Appellee.

WILLIAM B. EADIE, Attorney at Law, for Appellant/Cross-Appellee.

SUSAN M. AUDEY, ELISABETH C. ARKO, RAYMOND KRNCEVIC and ERNEST W. AUCILLO, Attorneys at Law, for Appellees/Cross-Appellants.