**[Cite as *Zeedyk v. 5C's Drying*, 2026-Ohio-618.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

CLINTON R. ZEEDYK, ET AL.,

    PLAINTIFFS-APPELLEES/
    CROSS-APPELLANTS,

       **CASE NO. 4-25-05**

    v.

5C'S DRYING, LLC, ET AL.,

    DEFENDANTS-APPELLEES/
    CROSS-APPELLEES,

    -And-

RACHEL E. CLELAND,
EXECUTRIX OF THE ESTATE OF
WILLIAM A. CLELAND, JR., ET AL.,

       **OPINION AND
       JUDGMENT ENTRY**

    DEFENDANTS-APPELLANTS/
    CROSS-APPELLEES.

---

**Appeal from Defiance County Common Pleas Court
Trial Court No. 18-CV-44364**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:  February 23, 2026**

---

**APPEARANCES:**

    *George R. Smith Jr.* **for Appellants/Cross-Appellees**

    *John A. Borell, Jr.* **for Appellees/Cross-Appellants**

**ZIMMERMAN, P.J.**

{¶1} Defendants-appellants/cross-appellees, Rachel E. Cleland, Executrix of the William A. Cleland, Jr. ("Cleland Estate"), Rachel E. Cleland ("Rachel"), and Phillip D. Cleland ("Phillip") (collectively, "defendants"), appeal the January 10 and May 5, 2025 judgment entries of the Defiance County Court of Common Pleas granting judgment and foreclosure in favor of plaintiffs-appellees/cross-appellants, Clinton R. Zeedyk ("Zeedyk") and Zeedyk Farms, LLC ("Zeedyk Farms") (collectively, "plaintiffs"). For the reasons that follow, we affirm in part and reverse in part.

*Factual Background*

{¶2} The extensive litigation before this court stems from a series of agricultural financial transactions that ultimately unraveled into competing foreclosure actions and tort claims. William A. Cleland Jr. ("William") was a farmer and the sole member of 5C's Drying, LLC ("5C's Drying"), a business dedicated exclusively to farming operations. To finance these farming operations, William and 5C's Drying entered into significant borrowing arrangements with Zeedyk, securing loans against both the 5C's Drying commercial facility and William's personal residence that he shared with his wife, Rachel.

{¶3} The financial entanglement between the parties was rooted in a long-standing personal history. Zeedyk testified that he originally began working for

William when he was in high school. Although they drifted apart for a time, they reconnected years later after Zeedyk encountered "some trouble," at which point William helped him find "the Lord." (Oct. 2, 2023 Tr. at 13). As a result, the two developed a close friendship in which they spoke nearly every day, frequently sharing meals and spending time together. This personal bond eventually transitioned into a financial one around 2008 when William began experiencing money trouble. To assist his friend, Zeedyk began loaning William money, initiating a pattern of undocumented lending that would continue for years.

{¶4} By 2018, the financial relationship between the parties had collapsed. While Zeedyk characterized the matter as a straightforward default on two primary instruments—a $400,000.00 cognovit note and a $250,000.00 personal note—the defendants disputed the validity of the enforcement actions. They argued that the debt was tainted by fraud and purported bad faith, giving rise to counter-allegations of slander of title. The dispute was further complicated by the intervention of Farm to Market Specialties, LLC ("Farm to Market"), which asserted a prepaid five-year leasehold interest on 5C's Drying's commercial property. Because this lease term allegedly commenced mere days before Zeedyk recorded his mortgage, a priority dispute emerged regarding whether the tenancy survived foreclosure, triggering additional claims for the misappropriation of the prepaid rent.

{¶5} The scope of liability eventually expanded beyond William and his

corporate entity to implicate wider familial assets. Specifically, the litigation broadened to include claims against Phillip and Doris I. Cleland, as trustee of the Doris I. Cleland Revocable trust dated 8/10/2011 ("Doris Trust") stemming from an alleged default on a separate contract for the sale of the family farming operation, 5C's Farms for $2,700,000.00. Through this claim the plaintiffs sought to hold these additional parties jointly liable alongside the Cleland Estate for the alleged breach.

{¶6} Consequently, what began as distinct legal matters—a foreclosure on 5C's Drying's commercial property, a separate foreclosure on William and Rachel's (together, "the Clelands") personal residence, and a lawsuit filed by the Clelands against Zeedyk for fraud and slander of title—converged. The trial court consolidated these three cases, necessitating the resolution of a labyrinth of cross-claims, counterclaims, and a third-party complaint involving the priority of liens and the validity of the underlying debts. The following procedural history details the specific filings and judgments that resulted from this consolidation.

*Procedural History*

{¶7} On October 5, 2016, 5C's Drying executed a cognovit note in the amount of $400,000.00 payable to Zeedyk. As security for the debt, 5C's Drying executed a mortgage in favor of Zeedyk against real property located at 9960 Rosedale Road, Hicksville, Ohio ("the business property"). The mortgage was filed on October 6, 2016, and recorded in Volume 399 of the Official Records at Page

715, in the Defiance County, Ohio Recorder's Office.

{¶8} On April 15, 2018, Zeedyk filed a foreclosure complaint against 5C's Drying, the Defiance County Board of Commissioners ("the Commissioners"), the Defiance County Treasurer ("Treasurer"), First Farmers Bank and Trust ("First Farmers Bank"), Roger Zeedyk, Jr., Hillandale Farms Ohio, LLC ("Hillandale Farms"), Farm to Market, the Ohio Bureau of Workers' Compensation, the Ohio Department of Taxation, the Ohio Department of Job and Family Services, and the U.S. Department of the Treasury ("Department of the Treasury"). In the complaint, Zeedyk requested judgment in the amount of $400,000.00, plus interest on the outstanding principal balance at a rate of $55.56 per day from October 10, 2016, along with attorney fees and costs.

{¶9} 5C's Drying filed its answer on April 16, 2018, admitting to the judgement in favor of Zeedyk as requested. Consequently, on that same day, the trial court issued a judgment in favor of Zeedyk against 5C's Drying in the amount of $400,000.00, plus interest on the outstanding principal balance at a rate of $55.56 per day from October 10, 2016, attorney fees, and costs.[1] On April 25, 2018, Zeedyk requested that the trial court issue a certificate of judgment for a lien against the lands and tenants of 5C's Drying.

{¶10} On April 30, 2018, the Treasurer filed an answer requesting that a tax

---

[1] On May 29, 2018, 5C's Drying filed a motion for relief from judgment under Civ.R. 60(B). On June 4, 2018, the trial court stayed the execution of the judgment pending its decision on the Civ.R. 60(B) motion.

lien be levied against the business property for unpaid property taxes, assessments, charges, penalties, and interest for tax year 2017 in the amount of $38,188.12. That same day, First Farmers Bank disclaimed any interest in the property and requested to be dismissed from the case, which the trial court granted. The Commissioners filed an answer on May 2, 2018.

{¶11} On May 10, 2018, Hillandale Farms filed an answer asserting that it held an option to purchase a portion of the business property. This option was memorialized by a June 6, 2013 Memorandum of Option, filed on June 25, 2013, and recorded in Volume 327, Page 2336, of the Official Records of the Defiance County Recorder's Office. Hillandale Farms further asserted that its option was the senior-most encumbrance and held priority over Zeedyk's mortgage and all other liens and encumbrances attached to the property.

{¶12} The Department of the Treasury filed an answer on May 14, 2018 asserting that it held a lien in the amount of $248,984.30, plus interest and penalties, against the business property. Notice of this lien was filed with the Defiance County Recorder's Office on October 23, 2017.

{¶13} On May 15, 2018, Farm to Market filed an answer alleging that it was a lessee under a commercial lease for the business property and that its lease had been prepaid for a term of five years commencing on October 1, 2016.

{¶14} On August 9, 2018, 5C's Drying file a motion for leave to file an

answer instanter, which the trial court granted and 5C's Drying's answer was filed on August 14, 2018.

*Case Consolidation*

**{¶15}** On May 29, 2018, 5C's Drying filed a motion requesting that the trial court consolidate this case with two other cases pending in the trial court: Case Numbers 18-CV-44305 and 18-CV-44373. The trial court granted the motion on June 4, 2018.

*Case Number 18-CV-44305*

**{¶16}** On February 11, 2016, the Clelands executed a note in the amount of $250,000.00 payable to Zeedyk. That same day, the Clelands executed a mortgage in favor of Zeedyk against their real property located at 7814 State Route 49, Hicksville, Ohio ("the personal property"). The mortgage was filed on February 12, 2016, and recorded in Volume 393, Page 1933, of the Official Records of the Defiance County Recorder's Office.

**{¶17}** Following the Clelands' default on the note, Zeedyk filed a foreclosure complaint in the trial court on February 28, 2018 against the Clelands, Citizens National Bank, First Farmers Bank, the Commissioners, and the Treasurer. In the complaint, Zeedyk requested judgment in the amount of $292,504.56, plus interest on the outstanding principal balance at a rate of eight percent per annum from February 11, 2018 along with costs and expenses incurred in the enforcement of the

note and mortgage.

{¶18} On March 9, 2018, the Treasurer filed an answer requesting a tax lien be levied against the personal property for unpaid property taxes, assessments, charges, penalties, and interest for tax year 2017 in the amount of $2,763.97. First Farmers Bank filed an answer on March 12, 2018 disclaiming interest in the property and requesting to be dismissed from the case, which the trial court granted.

{¶19} On March 21, 2018, Citizens National Bank filed an answer asserting that it held a note (executed on October 18, 2011) on the personal property executed in the amount of $172,000.00, with $136,232.27 remaining outstanding. Citizens National Bank further alleged that the Clelands executed a mortgage to secure the note, which was filed on October 19, 2011, and recorded in Volume 356, Page 651, of the Official Records of the Defiance County Recorder's Office. The Commissioners filed an answer on March 9, 2018 and an amended answer on April 11, 2018. On April 13, 2018, the Clelands filed their answer along with counterclaims against Zeedyk for fraud, slander of title, and quiet title. Zeedyk filed his answer to the Clelands' counterclaims on May 2, 2018.

*Case Number 18-CV-44373*

{¶20} In case number 18-CV-44373, 5C's Drying and William filed a complaint in the trial court on April 23, 2018 against the plaintiffs, alleging claims for fraud, slander of title, breach of contract, promissory estoppel, conversion, and

Case No. 4-25-05

an accounting.[2]

*Cross Claim/Counterclaim/Third Party Complaint*

{¶21} On May 1, 2019, Farm to Market filed counterclaims against Zeedyk, cross-claims against 5C's Drying, and a third-party complaint against William and Edward Cleland ("Edward") for breach of contract (damages and specific performance), conversion, fraud, theft of business/breach of duty/faithless agent, and slander of title.

{¶22} On May 23, 2019, 5C's Drying and William filed an answer to Farm to Market's cross-claims and third-party complaint. On May 24, 2019, Zeedyk filed an answer to Farm to Market's counterclaims. Because Edward did not file a timely response, Farm to Market filed a motion for default judgment on June 18, 2019, which the trial court granted on June 24, 2019.

*Amended Complaint*

{¶23} On May 14, 2019, the plaintiffs filed an amended complaint in the trial court, adding the Doris Trust and Phillip as parties. The amended complaint alleged Count One of enforcement of the cognovit note; Count Two of foreclosure on the mortgage associated with the business property; Count Three of breach of the note;

---

[2] As a result of the consolidation, the trial court designated 5C's Drying and Cleland's claims in 18-CV-44373 as counterclaims in this case. Prior to the filing of the amended complaint, 5C's Drying and the Clelands filed an amended answer along with counterclaims against Zeedyk for fraud, slander of title, quiet title, and attempted wrongful foreclosure (as to the personal property), and conversion, an accounting, fraud, slander of title, breach of contract/quantum meruit/unjust enrichment, promissory estoppel, and attempted wrongful foreclosure (as to the business property). Zeedyk filed an answer to these counterclaims.

Count Four of foreclosure on the mortgage associated with the personal property; Counts Five and Eight of breach of contract; Counts Six and Ten of fraud; Counts Seven and Eleven of negligent misrepresentation; and Count Nine of unjust enrichment.

{¶24} On May 15, 2019, the Commissioners filed an answer to the amended complaint, again requesting enforcement of their judgment lien. That same day, the Treasurer filed an answer to the amended complaint requesting that a tax lien be levied against the property for unpaid property taxes, assessments, charges, penalties, and interest for tax year 2017 in the amount of $38,188.12. On May 24, 2019, the Department of the Treasury filed an answer to the amended complaint, asserting a lien of $248,984.30 plus interest and penalties, which it had recorded with the Defiance County Recorder on October 23, 2017. Farm to Market and Hillandale Farms filed their answers to the amended complaint on May 28 and May 29, 2019, respectively.

{¶25} On July 1, 2019, 5C's Drying and the Clelands filed an answer to the plaintiffs' amended complaint along with counterclaims for fraud, quiet title, and attempted wrongful foreclosure (as to the personal property), as well as conversion, an accounting, breach of contract/quantum meruit, unjust enrichment, promissory estoppel, and attempted wrongful foreclosure (as to the business property). The plaintiffs filed an answer to 5C's Drying and the Clelands' counterclaims on July

17, 2019.

*Summary Judgment*

{¶26} On February 1, 2021, 5C's Drying, the Clelands, Phillip, and the Doris Trust filed a motion for summary judgment. Farm to Market filed a motion for partial summary judgment that same day. On March 1, 2021, the plaintiffs filed a motion for partial summary judgment as to Counts One through Four, along with a memorandum in opposition to the motion for summary judgment filed by 5C's Drying, the Clelands, Phillip, and the Doris Trust. That same day, the plaintiffs filed a memorandum in opposition to Farm to Market's motion for summary judgment. On March 15, 2021, 5C's Drying, the Clelands, Phillip, the Doris Trust, and Farm to Market filed replies to the plaintiffs' memoranda in opposition to their respective motions. On February 24, 2023, the trial court denied all pending summary judgment motions.

*Trial and Judgment*

{¶27} Following a bench trial, the trial court on January 10, 2025 granted judgment in favor of Zeedyk against 5C's Drying as to Count One in the amended complaint in the amount of $404,722.80 with interest at a rate of $41.10 per day after October 2, 2023; foreclosure as to the mortgage in Count Two; judgment in favor of Zeedyk against the Cleland Estate[3] and Rachel (also collectively, "the

---

[3] Cleland passed away on June 20, 2023. As a result, the Cleland Estate was subsequently substituted as the proper party in the case.

Clelands") as to Count Three in the amount of $402,876.71 with interest at a rate of $54.79 per day from October 2, 2023; foreclosure as to the mortgage in Count Four; and judgment in favor of Zeedyk against 5C's Drying in the amount of $150,000.00 as to Count Five.[4] The trial court further determined that the deed held by Farm to Market is subject to the mortgage held by Zeedyk on the property. Finally, the trial court awarded attorney fees to Zeedyk against the Clelands in the amount of $114,809.23.

{¶28} On February 6, 2025, the defendants filed a notice of appeal. On February 12, 2025, the plaintiffs filed a notice of cross-appeal. However, because issues remained outstanding or required clarification, the parties jointly requested that this court remand the case to the trial court to resolve those issues, which this court granted on February 24, 2025.

{¶29} Thereafter, the trial court issued an amended judgment entry and a decree in foreclosure (as to the personal property subject to Count Four) on May 1, 2025. In the amended entry, the trial court specified that the judgment awarded in favor of Zeedyk as to Count Five in the amount of $150,000.00 was rendered against the defendants. The trial court further specifically denied Counts Six through Eleven of the plaintiffs' amended complaint, 5C's Drying and the Clelands' counterclaims, and Farm to Market's claims.

---

[4] On February 21, 2025, the plaintiffs filed a notice of partial satisfaction of judgment as to Counts One and Two of their amended complaint.

{¶30} The defendants filed an amended notice of appeal on May 5, 2025. The plaintiffs filed an amended notice of cross-appeal on May 8, 2025. The defendants raise four assignments of error for our review, while the plaintiffs raise two assignments of error for our review. For ease of our discussion, we will begin by discussing the defendants' first, second, and third assignments of error together along with the plaintiffs' first and second assignments of error, then the defendants' fourth assignment of error.

### Defendants' First Assignment of Error

**The trial court erred in granting Plaintiff judgment of foreclosure on Defendant Rachel Cleland's personal residence, its judgment being contrary to law and against the manifest weight of the evidence as Plaintiff failed to meet his burden of proving that there was an outstanding balance due and owing from Defendant at the time the note and mortgage were executed and evidence of financial transactions between the parties established there was a want of consideration. [JE (Docket 141) at p. 4 - 5; Am. JE and Foreclosure Decree (Docket 163) at pp. 2 - 4].**

### Defendants' Second Assignment of Error

**The trial court erred in granting Plaintiff judgment on his breach of contract claim in connection with the Farm sale, its judgment being contrary to law and against the manifest weight of the evidence, as it failed to account for the seller hold-back credit the application of which would have resulted in judgment for Defendants on their counterclaims. [JE (Docket 141) at p. 6; Am. JE and Foreclosure Decree (Docket 163) at p. 2].**

**Defendants' Third Assignment of Error**

**The trial court erred in dismissing defendant's counterclaim for breach of contract on sale of the 5C's Drying, LLC's hauling business, its judgment being contrary to law and against the manifest weight of the evidence as it wrongly disregarded admissions by Plaintiff and a substantial cache of documentary evidence establishing an express contract or a contract implied in fact or in law where defendant fully performed pursuant to the terms of an oral agreement memorialized in writing by Plaintiff's lawyer, Plaintiff began, but then repudiated, performance thereunder and retained the benefits of defendant's performance after breaching the agreement. [JE (Docket 141) at pp.7, 8; Am. JE and Foreclosure Decree (Docket 163) at p. 2].**

**Plaintiffs' First Assignment of Error**

**The trial court erred in its award of damages as to Count 5 of Plaintiffs' Amended Complaint.**

**Plaintiffs' Second Assignment of Error**

**The trial court erred in failing to award judgment in favor of Zeedyk Farms as to Count 8 of Plaintiffs' Amended Complaint.**

{¶31} In their first, second, and third assignments of error, the defendants contend that the trial court's decision granting judgment in favor of the plaintiffs is against the manifest weight of the evidence. Specifically, they contend that the trial court lost its way by granting foreclosure as to the personal property, calculating damages from sale of 5C's Farms, and determining the existence of a contract for

the hauling business.

{¶32} Similarly, in their first and second assignments of error, the plaintiffs challenge the weight of the evidence regarding the damages awarded for the 5C's Farms transaction and the denial of their claims related to the hauling business.

*Standard of Review*

{¶33} "'When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review.'" *Lump v. Larson*, 2015-Ohio-469, ¶ 9 (3d Dist.), quoting *San Allen, Inc. v. Buehrer*, 2014-Ohio-2071, ¶ 89 (8th Dist.). *See also Wells Fargo Bank N.A. v. Freed*, 2012-Ohio-5941, ¶ 32 (3d Dist.) ("In foreclosure bench trials, a trial court's factual findings are entitled to deference and are only disturbed upon a showing that the findings are against the manifest weight of the evidence."); *Doerschuk v. KLG Mobile Intensive Co.*, 2019-Ohio-5248, ¶ 11 (7th Dist.) ("The award of compensatory and punitive damages following a bench trial is subject to a manifest weight review."). "'[A] civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."'" *Lump* at ¶ 9, quoting *Warnecke v. Chaney*, 2011-Ohio-3007, ¶ 13 (3d Dist.), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶34} When applying the manifest-weight standard, we must presume that

the trier of fact's findings are correct. *Id.* at ¶ 10. "'The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures.'" *Id.*, quoting *Warnecke* at ¶ 13, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'"A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."'" *Id.*, quoting *Warnecke* at ¶ 13, quoting *Seasons Coal* at 81. "'"A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Warnecke* at ¶ 13, quoting *Seasons Coal* at 81.

*Analysis*

{¶35} We will begin by addressing the defendants' manifest weight of the evidence argument regarding the trial court's foreclosure decree on the personal property. Then, we will address the judgment concerning the sale of 5C's Farms, analyzing together the defendants' challenge to the damages award and the plaintiffs' argument regarding the calculation of those damages. Finally, we will conclude with an analysis of the defendants' and the plaintiffs' arguments related to the hauling contracts.

*Foreclosure of Personal Property*

{¶36} In this case, with respect to the foreclosure action of the personal

property, the trial court granted judgment in favor of the plaintiffs and against the Clelands in the amount of $402,876.71, plus interest, and ordering foreclosure on their personal property. In its analysis, the trial court determined that the executed note and mortgage constituted "specific affirmative evidence" of the parties' agreement. (Doc. No. 141). The trial court then weighed the Clelands' affirmative defense of want of consideration against this evidence. After reviewing "all the evidentiary materials before the court as a whole" and specifically factoring in the "credibility issues involved," the trial court concluded that the Clelands failed to "establish[] a lack of consideration to invalidate the notes and mortgages." (*Id.*).

{¶37} On appeal, the defendants do not dispute the trial court's determination that the plaintiffs established the existence of the executed note and mortgage. Rather, their challenge focuses on the trial court's rejection of their affirmative defense. Specifically, they contend that the trial court lost its way in determining that the instruments were valid, arguing that the weight of the evidence demonstrated a complete want of consideration—specifically that the transaction was a sham designed to shield assets—which should have invalidated the debt.

{¶38} In response, the plaintiffs argue that the defendants failed to meet their burden of proving their affirmative defense of want of consideration because they offered no documentary evidence to support their claim that the transaction was a sham. The plaintiffs emphasize that the defendants' case rested entirely on self-

serving testimony that the trial court found to be lacking in credibility. Furthermore, the plaintiffs assert that they were under no legal obligation to produce a "paper trail" or additional bank records to validate the debt once the signed instrument was admitted into evidence.

{¶39} "'A promissory note is defined as "a written promise to pay a certain sum of money at a future time, unconditionally."'" *Santomieri v. Mangen*, 2018-Ohio-1443, ¶ 13 (3d Dist.), quoting *Morgan v. Mikhail*, 2008-Ohio-4598, ¶ 66 (10th Dist.), quoting *Burke v. State*, 104 Ohio St. 220, 222 (1922). *See also U.S. Bank Natl. Assn. v. George*, 2020-Ohio-6758, ¶ 27 (10th Dist.) ("A promissory note secured by a mortgage is a negotiable instrument."). Generally, the holder of a promissory note establishes a prima facie case for payment on the note by simply placing the promissory note into evidence and securing an admission of the maker's signature. *Santomieri* at ¶ 13. *See also* R.C. 1303.36(B).

{¶40} "A party may defend against having to pay under a promissory note by arguing failure or want of consideration for the note." *Santomieri* at ¶ 13. *See* R.C. 1303.33(B). Ohio law distinguishes between a "want of consideration" and a "failure of consideration." *Santomieri* at ¶ 16. Want of consideration refers to a total lack of any valid consideration at the time of agreement. *Id.* In contrast, a failure of consideration occurs when a party neglects or refuses to perform or furnish the consideration that was actually agreed upon. *Id.*

**{¶41}** "'"'The law presumes the existence of a consideration for a promissory note, and this presumption continues until it is shown that there was none; and the burden of showing this is on the party attacking the note for want of consideration.'"'" *Id* at ¶ 13, quoting *Gallon v. Scouten*, 2007-Ohio-2957, ¶ 17 (6th Dist.), quoting *Dalrymple v. Wyker*, 60 Ohio St. 108 (1899), paragraph three of the syllabus. "'[A] claim of a lack of consideration for [a promissory note] is an affirmative defense which must be proved by a preponderance of the evidence.'" *Id.*, quoting *Sur-Gro Plant Food Co., Inc. v. Morgan*, 29 Ohio App.3d 124, 129, (12th Dist. 1985).

**{¶42}** Based on our review of the record in this case, we conclude that there is some competent, credible evidence supporting the trial court's decision rejecting the defendants' affirmative defense of want of consideration. Specifically, the record supports the trial court's determination that the defendants failed to demonstrate by a preponderance of the evidence that the mortgage and note were invalid for a want of consideration. *See LaFrance v. Ralich*, 2023-Ohio-4291, ¶ 35 (7th Dist.).

**{¶43}** It is undisputed that the trial court properly determined that the plaintiffs established a prima facie case for payment based on the $250,000.00 promissory note and corresponding mortgage executed by the Clelands on their personal property. Indeed, Zeedyk not only produced the note and mortgage, but

William also admitted that the signatures on the instruments were his. *See Mercantile Bldg. & Loan Co. v. Gampher*, 1984 Ohio App. LEXIS 9723, *4 (12th Dist. Mar. 29, 1984) ("Since appellant acknowledged that she signed the note and mortgage, she can avoid liability only if she can establish a defense to the satisfaction of the trier of the facts."). Because the admission of the instrument itself establishes the existence of the debt, the plaintiffs were under no legal obligation to produce a "paper trail" or additional bank records to validate the transaction. *See State ex rel. Herbert v. Hoff*, 140 Ohio St. 236, 239 (1942) (explaining that, because a promissory note "imports consideration," a plaintiff creates a prima facie case upon its admission and "may rest without offering any evidence to prove consideration"); *Sur-Gro Plant Food Co. v. Morgan*, 29 Ohio App.3d 124, 128-130 (12th Dist. 1985). Consequently, the burden of proof shifted to the Clelands, and the sole issue before this court is whether some competent, credible evidence supports the determination that they failed to prove their affirmative defense of want of consideration.[5]

**{¶44}** Critically, in challenging the trial court's rejection of their affirmative defense, the defendants fail to appreciate that the burden of proof had shifted to them. Indeed, to meet this burden, the Clelands relied almost exclusively on their

---

[5] To the extent the defendants attempt to argue the affirmative defense of fraud in their reply brief, we decline to address it because they failed to raise this defense in their merit brief, having framed their first assignment of error solely as a failure to prove consideration. *See API in the Sky, L.L.C. v. Testa*, 2018-Ohio-4812, ¶ 21.

own testimony that the note was a "sham" concocted to shield assets from "Uncle Ed"—testimony the trial court explicitly found to be not credible. (Doc. No. 141). (*See* William Depo., Vol. I, at 11, 13, 30). As the trier of fact, the trial court was free to disbelieve William's self-serving testimony that they engaged in a fraudulent scheme, and we will not disturb such credibility determinations on appeal. *See LaFrance*, 2023-Ohio-4291, at ¶ 36 (7th Dist.); *Universal Steel Bldgs. Corp. v. Dues*, 2024-Ohio-698, ¶ 175 (3d Dist.). Indeed, "'[i]t is beyond well-established that appellate courts must generally refrain from second-guessing trial court decisions regarding credibility.'" *Freed*, 2012-Ohio-5941, at ¶ 32 (3d Dist.), quoting *Powell v. Vanlandingham*, 2011 Ohio 3208, ¶ 36 (4th Dist.), and citing *Bradford v. B & P Wrecking Co.*, 2007-Ohio-1732, ¶ 65 (6th Dist.) (affirming a foreclosure decree by refusing to second-guess the trial court's credibility determinations regarding the parties' conflicting testimony).

{¶45} Nevertheless, notwithstanding the rejection of William's testimony, the defendants contend that they met their burden of proving their defense by producing "documents showing payments made to Zeedyk (which Zeedyk had not credited to him) which showed a want of consideration . . . ." (Appellant's Brief at 13). This argument is without merit. Far from proving a want of consideration, these documents—cancelled checks from William to Zeedyk from 2008 and 2009—corroborate the existence of the underlying debt. *See W. Res. Farm Coop.*, 2010-

Ohio-2950, ¶ 20 (11th Dist.) ("'It is well-settled that a note given as security for an antecedent debt is sufficient consideration to establish a valid obligation under a promissory note.'"), quoting *Bertrand v. Lax*, 2005 Ohio 3261, ¶ 20 (11th Dist.); R.C. 1303.33(A)(3). Indeed, Zeedyk testified that the 2016 note was executed to memorialize the running balance of loans he had made to William over the preceding years. Therefore, while the plaintiffs had established prima facie evidence of consideration by simply producing the note, the trial court had further competent, credible evidence to conclude that the note was supported by consideration in the form of this preexisting debt.

**{¶46}** In sum, the defendants are essentially asking this court to retry the case, which we will not do. *See Kern v. Mishler*, 2025-Ohio-1698, ¶ 91 (3d Dist.). Instead, based on our review of the record, we conclude that some competent, credible evidence supports the trial court's rejection of the defendants' affirmative defense of want of consideration. *See Freed* at ¶ 33. Accordingly, the trial court's judgment granting foreclosure of the personal property is not against the manifest weight of the evidence.

**{¶47}** The defendants' first assignment of error is overruled.

*Contract Disputes*

**{¶48}** Having resolved the defendants' assignment of error regarding the foreclosure, we now turn to the parties' arguments concerning the sale of 5C's

Farms and the hauling contracts. "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41. To set forth a claim for breach of contract, a complaining party must prove by a preponderance of the evidence (1) the existence of a binding contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting damages. *Langfan v. Carlton Gardens Co.*, 2009-Ohio-3318, ¶ 25 (3d Dist.).

{¶49} "'To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties.'" *Adams v. Disbennett*, 2008-Ohio-5398, ¶ 15 (3d Dist.), quoting *Cramer v. Bucher*, 2002 Ohio 3397, ¶ 10 (3d Dist.). *See also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 2023-Ohio-1728, ¶ 31 (1st Dist.) ("In order for a contract to exist, there generally must be an offer, acceptance, and consideration."). "The alleged contract must also reflect the essential terms with definiteness and certainty, as there must be a meeting of the minds as to all essential terms." *Danziger & De Llano* at ¶ 31. "To reflect a meeting of the minds, all parties to an agreement must mutually assent to the substance of the contract." *Id.* "The parties must have a distinct and common intention that is communicated by each party to the other." *Id.*

{¶50} "The amount of damages to be awarded in a breach of contract action is a factual issue; therefore, it is within the factfinder's province to determine the amount of damages to be awarded." *2454 Cleveland, LLC v. TWA, LLC*, 2020-Ohio-362, ¶ 16 (10th Dist.).

*Sale of 5C's Farms*

{¶51} As to the breach of contract claim regarding the sale of 5C's Farms, the trial court awarded judgment in favor of the plaintiffs in the amount of $150,000.00. The trial court found that the sellers—namely, William, Phillip, and the Doris Trust—breached the agreement by failing to disclose existing indebtedness. Specifically, the trial court identified the undisclosed debt as the "Malfait" lease arrangement, in which a tenant farmer had prepaid approximately $150,000.00 for a multiple-year tenancy. However, the trial court declined to award damages for other alleged debts after determining that the plaintiffs failed to establish the validity or payment of those additional claims.

{¶52} Here, the parties present competing challenges to the trial court's damages calculation as to the sale of 5C's Farms. First, the defendants contend that the damages award was against the manifest weight of the evidence because the trial court failed to account for a critical financial set-off. In particular, they argue that the evidence established their entitlement to a "$200,000 seller hold-back credit" regarding the transaction proceeds. (Appellant's Brief at 15). They assert that, had

the trial court properly applied this credit against the liability arising from the "Malfait" lease, the $150,000.00 judgment against them would have been fully offset, effectively reducing their liability to zero.[6]

{¶53} In response to the defendants' setoff claim and in support of their own assignment of error, the plaintiffs do not dispute the existence of the initial $200,000.00 credit; however, they argue that the credit was fully exhausted. Specifically, the plaintiffs point to Zeedyk's testimony indicating that he paid $457,805.98 to cover other undisclosed liabilities associated with 5C's Farms—an amount far exceeding the value of the hold-back credit. Thus, the plaintiffs maintain that this evidence not only defeats the defendants' entitlement to a setoff but also demonstrates that the trial court erred by capping the damages at $150,000.00 since these additional valid debts should have been included in the final judgment.

{¶54} Because the parties do not dispute the existence of the $200,000.00 credit, the trial court's decision awarding the plaintiffs $150,000.00 in damages associated with the sale of 5C's Farms is against the manifest weight of the evidence.[7]  Indeed, the trial court found that "the contract did contain a $200,000.00 'holdback' to address undisclosed claims." (Doc. No. 141).  The trial court then identified the Malfait lease arrangement as an undisclosed indebtedness of

---

[6] To the extent that the defendants argue that they are entitled to a judgment for the remaining $50,000.00 surplus based on their counterclaims for conversion and an accounting, we decline to address this argument. *See* App.R. 16(A)(3).
[7] The parties agreed at oral argument to the availability of the $200,000.00 credit.

"approximately $150,000.00." (*Id.*). Thus, the issue before us is not whether the Malfait liability exists, but whether the trial court failed to properly offset that liability against the available credit.

{¶55} We agree with the defendants that the trial court failed to properly apply the available credit. Crucially, the trial court expressly rejected Zeedyk's contention that he had exhausted the $200,000.00 credit on any other undisclosed debts. By finding that Zeedyk failed to prove the validity of these additional payments, the trial court effectively determined that the credit remained available. Therefore, the trial court's failure to offset the $150,000.00 liability against the undisputed $200,000.00 credit is against the manifest weight of the evidence. *See Fleischer v. George*, 2010-Ohio-3941, ¶ 28 (9th Dist.).

{¶56} Conversely, we find no merit in the plaintiffs' first assignment of error seeking additional damages in excess of the credit. Zeedyk's argument relies entirely on the same evidence of other undisclosed debts that the trial court found insufficient. *See Frisby v. Solberg*, 2016-Ohio-7644, ¶ 18 (12th Dist.) (finding no error in the trial court's refusal to offset alleged cash and check payments against a damages award where the appellant failed to prove the monies were actually paid and the trial court found the appellant's testimony lacked credibility). Importantly, the trial court, acting as the trier of fact, determined that Zeedyk's testimony and documentation regarding these additional liabilities lacked credibility. Unlike the

mathematical error identified above, this determination falls squarely within the trial court's discretion to weigh credibility. *See Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶ 123 (7th Dist.). Accordingly, we will not second-guess the trial court's credibility assessment of the evidence and decline to disturb its determination on appeal. Thus, because the trial court determined that Zeedyk failed to prove these additional debts existed, he cannot use them to increase the judgment nor to claim that the hold-back credit was exhausted.

**{¶57}** For these reasons, the defendants' second assignment of error is sustained, and the plaintiffs' first cross-assignment of error is overruled.

*Hauling Contracts*

**{¶58}** Finally, addressing the competing arguments concerning the hauling business, the trial court determined that no enforceable contract for the sale or assignment of the hauling operations was ever formed.[8] While the trial court acknowledged that the parties discussed assigning the contracts, it determined that such "assignments apparently never actually occurred." (Doc. No. 141). Instead, the trial court concluded that the evidence indicated that Zeedyk made independent arrangements with shippers separate from any pre-existing agreements. Based on

---

[8] To the extent the plaintiffs contend that the defendants' third assignment of error is not properly before this court because 5C's Drying was not explicitly named in the notice of appeal, we elect to exercise our discretion to address the merits of the assignment of error in the interest of justice. *See Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320 (1995), syllabus (holding that, pursuant to App.R. 3(A), the only jurisdictional requirement for a valid appeal is the timely filing of a notice of appeal, and determining that appellate courts have discretion to waive other technical defects to ensure cases are decided on their merits).

this finding, the trial court rejected both parties' claims relating to the hauling business, concluding that neither party proved the validity of their respective claim by a preponderance of the evidence.

{¶59} On appeal, the defendants argue that the trial court lost its way by rejecting their counterclaim despite the evidence of a binding agreement. In particular, they point to the cumulative weight of Zeedyk's own admissions and documentary evidence—including terms memorialized by Zeedyk's own counsel—which they assert affirmatively established either an express oral contract or an implied-in-fact contract.[9] Consequently, they argue that this evidence should have compelled the trial court to reject Zeedyk's repudiation and find that a valid contract was formed.

{¶60} The plaintiffs also challenge the trial court's determination that no contract existed, but for a different reason. Specifically, they contend that the evidence established a valid agreement regarding the hauling business, but argue that the trial court erred by failing to award damages for the defendants' failure to properly transfer the assets or facilitate the transition.

{¶61} "'Ohio recognizes three types of contracts: express, implied in fact, and implied in law (or quasi-contract).'" *Deffren v. Johnson*, 2021-Ohio-817, ¶ 17 (1st Dist.), quoting *Linder v. Am. Natl. Ins. Co.*, 2003-Ohio-5394, ¶ 18 (1st Dist.).

---

[9] To the extent the defendants argue that a contract implied-in-law (unjust enrichment) arose, we decline to address this issue since it was not properly assigned as error. *See* App.R. 16(A)(3).

"Further, contracts may be written or oral." *Wajda v. M&J Automotive*, 2010-Ohio-6584, ¶ 37 (7th Dist.).

{¶62} "'While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the contract.'" *Nexus Communs., Inc. v. Qwest Communs. Corp.*, 2011-Ohio-1759, ¶ 33 (10th Dist.), quoting *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 133 Ohio App.3d 844, 849 (7th Dist. 1999). *See also Deffren* at ¶ 19 ("'As in all contracts, express or implied, both parties must intend to be bound.'"), quoting *Smiddy v. Kinko's, Inc.*, 2003-Ohio-446, ¶ 20 (1st Dist.). "The primary difference between express contracts and contracts implied in fact is one of proof—the former is proven by words (oral or written) and the latter is proven by acts, conduct, and circumstances." *Martin v. Jones*, 2015-Ohio-3168, ¶ 40 (4th Dist.).

{¶63} "In an express contract, assent to the contract's terms is formally expressed in the parties' offer and acceptance." *Nexus Communs.* at ¶ 34. Evidence of the exact words of offer and acceptance is not essential to prove an oral contract. *Gates v. Praul*, 2011-Ohio-6230, ¶ 18 (10th Dist.). Rather, the requisite mutual assent and terms of the agreement may be determined from the "'words, deeds, acts, and silence of the parties . . . .'" *Id.*, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (12th Dist. 1947), paragraph one of the syllabus. Thus, parties may manifest their

mutual assent either by making a promise or by beginning or rendering performance. *Id.* at ¶ 19.

**{¶64}** "Courts may enforce oral agreements if the terms "'can be established by clear and convincing evidence.""" *Cooper v. W. Carrollton*, 2018-Ohio-2547, ¶ 29 (2d Dist.), quoting *Clemens v. Clemens*, 2008-Ohio-4730, ¶ 93 (2d Dist.), quoting *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 798-799 (10th Dist. 1992). "Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. "The party asserting the existence of such an agreement also has the burden of proof." *Cooper* at ¶ 29.

**{¶65}** Distinct from express contracts, "'[a]n implied-in-fact contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement.'" *Nexus Communs.* at ¶ 34, quoting *Fouty v. Ohio*

*Dept. of Youth Servs.*, 2006-Ohio-2957, ¶ 56 (10th Dist.). In such cases, the meeting of the minds—typically demonstrated by distinct offer and acceptance—is instead inferred from the surrounding circumstances, establishing a tacit understanding to be bound. *Id.* "'There is . . . a heavy burden on the party relying on an implied contract to "demonstrate the existence of each element necessary to the formation of a contract including, inter alia, the exchange of bilateral promises, consideration and mutual assent."'" *Deffren*, 2021-Ohio-817, at ¶ 19 (1st Dist.), quoting *Sagonowski v. The Andersons, Inc.*, 2005-Ohio-326, ¶ 14 (6th Dist.), quoting *Bowes v. Toledo Collision-Toledo Mechanical, Inc.*, 2000 Ohio App. LEXIS 3727, *9 (6th Dist. Aug. 18, 2000).

**{¶66}** "To be enforceable, a contract must be definite and certain." *Martin*, 2015-Ohio-3168, at ¶ 42 (4th Dist.), citing *Rayess v. Educ. Commn. for Foreign Med. Graduates*, 2012-Ohio-5676, ¶ 19.

> A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

*Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997), quoting 1 Corbin, *Corbin on Contracts*, § 4.1, at 525 (Rev.Ed. 1993).

-31-

**{¶67}** Nevertheless, although all agreements contain some inherent uncertainty and human language is prone to error, parties must still be held accountable for the promises they make. *Martin* at ¶ 43. Consequently, because such ambiguity is unavoidable, perfect clarity in every single term is not required. *Id.* This is particularly true for oral contracts, where evidence rarely reflects the precise language of offer and acceptance typical of formal written agreements, nor is such exactitude legally required. *Id.* Instead, "[t]he terms of an oral contract must be established through oral testimony and a determination of those terms is a question for the trier of fact." *Gates*, 2011-Ohio-6230, at ¶ 18 (10th Dist.).

**{¶68}** In the defendants' third assignment of error and the plaintiffs' second assignment of error, the parties contend that the trial court erred by failing to enforce their respective versions of the alleged hauling agreement. However, based on our review of the record before us, we conclude that the trial court's rejection of the defendants' contract theories—both express and implied-in-fact—and its rejection of the plaintiffs' contract theory is supported by some competent, credible evidence. That is, some competent credible evidence supports the trial court's determination that neither party met their burden of proving the existence of an enforceable contract.

**{¶69}** Decisively, the overarching defect common to all of the parties' contract theories is the absence of a meeting of the minds. Indeed, whether analyzed

as an express oral agreement or a contract implied-in-fact, some competent, credible evidence supports the trial court's determination that the parties' extensive negotiations never coalesced into a binding obligation.

{¶70} Specifically, regarding the defendants' express contract contention, the lack of signed documents and credible testimony undermines the certainty of the terms. Here, the defendants rely heavily on unexecuted drafts prepared by Zeedyk's counsel to establish the essential terms. However, the fact that the drafts remained unsigned supports the inference that the parties never reached a final mutual assent on the specific terms contained in the documents. *See Bd. of Cty. Commrs. v. Toledo*, 1993 Ohio App. LEXIS 4478, *14-15 (6th Dist. Sep. 24, 1993) (determining that an unsigned document labeled as a "draft" provided notice that "a further manifestation of assent was necessary" and indicated the parties were merely engaged in preliminary negotiations). Critically, because this determination was heavily reliant on the trial court's assessment of the witnesses' credibility, the trial court was not required to accept unexecuted drafts as binding without credible testimony to corroborate that these unsigned drafts accurately reflected a final agreement. *See Calderone v. Duebelt*, 2025-Ohio-800, ¶ 25 (11th Dist.). *See also Rulli*, 79 Ohio St.3d at 376. Accordingly, because the terms remained indefinite and the testimony supporting them was found to lack credibility, some competent,

credible evidence supports the trial court's determination that no express oral contract was formed.

**{¶71}** As to the implied-in-fact contract theory, the refusal of the third-party shipper, Tate & Lyle, to consent to the transfer prevented the conduct required for formation. "A condition precedent must occur before obligations in a contract become effective." *Battle Axe Constr., LLC v. H. Hafner & Sons, Inc.*, 2019-Ohio-4191, ¶ 25 (1st Dist.). *See also Anzalaco v. Graber*, 2012-Ohio-2057, ¶ 21 (8th Dist.) ("Where, however, the formation of a contract is dependent upon a condition precedent, such condition must be performed before the agreement becomes effective."). "A condition precedent calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on before the contract shall be binding on the parties." *Anzalaco* at ¶ 21. "[A] contract, the fulfillment of which by express or implied agreement is made to depend upon the act or consent of a third party over whom neither party has any control, cannot be enforced unless the act is performed or the consent given." *Kandel v. Gran*, 1981 Ohio App. LEXIS 12445, *11-12 (5th Dist. June 17, 1981). Indeed, the "reasons given for third person's failure or refusal to act or give consent are immaterial," unless caused by the fault of the promisor. *Id.* at *12. "An unsatisfied condition precedent excuses performance under the contract and is a defense to a breach-of-contract claim." *Gilman v. Physna*, 2021-Ohio-3575, ¶ 19 (1st Dist.).

{¶72} In this case, even if the parties' conduct suggested an agreement, the failure of this essential condition precedent precluded the creation of an enforceable contract. That is, because the necessary third-party consent was never obtained, the conduct relied on by the defendants does not support an inference that a valid, binding contract was successfully formed. *See Palmer v. George Ballas Buick*, 1984 Ohio App. LEXIS 11598, *12-13 (6th Dist. Nov. 23, 1984) (determining that the failure to satisfy an "implied-in-fact condition precedent" precluded the creation of a contract). Consequently, we conclude that some competent, credible evidence supports the trial court's determination that no contract implied-in-fact was formed.

{¶73} Finally, regarding the plaintiffs' contract theory and claim for damages, some competent, credible evidence supports the trial court's determination that the plaintiffs failed to meet their burden of proving the existence of an enforceable contract. Specifically, the trial court found that, based on Zeedyk's own testimony, Zeedyk secured the shipping routes through his own independent arrangements rather than through an assignment of the defendants' existing contracts, as was being negotiated under the purported agreement. In other words, because Zeedyk secured the work on his own—outside the terms of the alleged agreement—the bargained-for exchange essential to contract formation failed to occur.

{¶74} As a result, the same fatal defect that defeated the defendants' implied-in-fact contract theory also precludes the plaintiffs' contract theory. That is, just as the Tate & Lyle refusal prevented the formation of a contract for the defendants, that same refusal confirms that the plaintiffs never received the bargained-for exchange necessary to create a binding contract. *See Shaffer v. Triple Diamond Excavating*, 2010-Ohio-3808, ¶ 27 (11th Dist.). Consequently, some competent, credible evidence supports the trial court's determination that Zeedyk did not satisfy his burden of proving that the parties formed an enforceable contract. Without a perfected contract to enforce, the trial court properly determined that Zeedyk's voluntary debt payments could not be recovered as damages for the breach of a non-existent contract, but were rather a failed business risk. *See id.* at ¶ 33.

{¶75} For these reasons, some competent credible evidence supports the trial court's conclusion that the negotiations never coalesced into a binding deal for either party. Therefore, the trial court's judgment as to the hauling agreement is not against the manifest weight of the evidence.

{¶76} For these reasons, the defendants' third assignment of error and the plaintiffs' second assignment of error are overruled.

### Defendants' Fourth Assignment of Error

**The Trial Court erred in awarding Plaintiff the full amount of attorney's fees invoiced in an action involving multiple claims and**

**parties, its judgment constituting an abuse of discretion, where Plaintiff was only entitled to an award of fees incurred in prosecution of a foreclosure action against Defendant's principal residence and time expended in prosecution of other, unrelated claims (for which fees were not awardable against Defendant) was readily separable from the foreclosure claim. [JE (Docket 141) at p. 5, 9; Am. JE and Foreclosure Decree (Docket 163) at p. 3].**

{¶77} In their fourth assignment of error, the defendants argue that the trial court erred by awarding the plaintiffs' attorney fees. Specifically, they contend that the trial court failed to segregate the fees, effectively awarding costs for the entire litigation when recovery was limited solely to the foreclosure actions.

*Standard of Review*

{¶78} "The decision to award attorney fees and the amount thereof are within the discretion of the trial court." *Technical Constr. Specialties, Inc. v. New Era Builders, Inc.*, 2012-Ohio-1328, ¶ 26 (9th Dist.). Therefore, we review a trial court's determination regarding attorney fees for an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶79} "Because Ohio Courts adhere generally to the 'American Rule' regarding attorney fees, prevailing parties may not recover attorney fees unless

provided by statute or contract or in the event that punitive damages are awarded." *Estate of Samples v. Lagrange Nursing & Rehab. Ctr., Inc.*, 2024-Ohio-4441, ¶ 19 (9th Dist.). When attorney fees are authorized, "'the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere.'" *Bittner* at 146, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist. 1985). When determining the appropriate attorney fees award, "Ohio courts . . . 'are not required to act as "green-eyeshade accountants" and "achieve auditing perfection" but instead must simply . . . do "rough justice."'" *Chapel v. Wheeler Growth Co.*, 2023-Ohio-3988, ¶ 20 (1st Dist.), quoting *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016), quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011).

**{¶80}** In this case, the trial court awarded the plaintiffs' attorney fees "related to Counts 1, 2, 3, and 4," which corresponded specifically to the foreclosure actions. (Doc. No. 141). However, the trial court proceeded to award a total of $114,809.23 in attorney fees, a figure representing the aggregate legal costs accrued by the plaintiffs for the entire litigation. On appeal, the defendants contend that the trial court abused its discretion by failing to segregate the attorney fees incurred for the foreclosure claims from those attributable to the unrelated business disputes. In particular, they assert that, by awarding the unsegregated total, the trial court

improperly forced them to pay for legal work on complex contract claims for which no fee-shifting provision applied.

{¶81} We agree. "[W]here the 'claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded.'" *Stults & Assocs. v. United Mobile Homes*, 1998 Ohio App. LEXIS 5097, *43 (3d Dist. Oct. 14, 1998), quoting *Bittner*, 58 Ohio St.3d at 145.

{¶82} Based on our review of the record, it is apparent that, while the trial court purported to award attorney fees specifically for the foreclosure claims, it effectively awarded the total legal costs for the entire litigation. Indeed, in a footnote within their closing brief, the plaintiffs broadly asserted that their "attorney fees were $114,809.03 [sic]." (Doc. No. 139). To support this figure, they submitted Exhibit 93, a cumulative ledger reflecting the aggregate fees for the whole case. Crucially, this exhibit failed to segregate the fees associated with the foreclosure claims from those incurred for the unrelated contract disputes.

{¶83} Consequently, based on the record before us, we conclude that the trial court abused its discretion by awarding unsegregated fees for the entire litigation rather than isolating costs attributable to the fee-shifting foreclosure claims. *See Stults & Assocs.* at *43-44 (determining that, where an attorney fee provision existed

in only two of the parties' multiple agreements, the trial court was required to segregate the fees and award only the time spent pursuing the specific claims for which fees were contractually recoverable).

**{¶84}** Accordingly, the fourth assignment of error is sustained, and the matter is remanded for a proper determination of recoverable attorney fees.

**{¶85}** Having found no error prejudicial to the appellant/cross-appellee herein in the particulars assigned and argued in their first and third assignments of error, and the appellee/cross-appellant herein in the particulars assigned and argued in their first and second assignments of error, we affirm the judgment of the trial court. However, having found error prejudicial to the appellant/cross-appellee herein in the particulars assigned and argued in their second and fourth assignments of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**MILLER and WALDICK, J.J., concur.**

Case No. 4-25-05

# **<u>JUDGMENT ENTRY</u>**

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellants/Cross-Appellees and Appellees/Cross-Appellants for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

Mark C. Miller, Judge

Juergen A. Waldick, Judge

DATED:
/hls

-41-